Case number 21-3058, United States of America v. Keith B. McGill, Appellant. Ms. Hughes for the Appellant, Ms. Kelly for the Appellant. Thank you. Before we start, I would just like to take a moment to remember Ken Starr, who passed away yesterday. He was a former judge on this circuit from 1983 to 1989. He was a beloved colleague and friend to many in this building. And our thoughts are with his wife Alice and with his family. Thank you. Good morning. When the court sentences a defendant, the court is supposed to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 355-3A2. That is, just punishment, deterrence, protection of the public, and rehabilitation. Mr. McGill contends the sentence he was given was far greater than necessary to achieve those purposes. There's two concepts that keep appearing throughout Mr. McGill's case. One is discretion. The other is rehabilitation. And they're both, each is problematic in its own way. At sentencing, the district court chose to give very little weight to Mr. McGill's rather extraordinary record of rehabilitation. And when I say rehabilitation has a problem, this is actually what I'm thinking of. Mr. McGill, during his 20 years of incarceration, has had almost no disciplinary actions at all. No physical involvement, fighting, nothing like that. All he's done is improve himself. In fact, for the facility where he is, he was offered a job to work in the law library to help other inmates with their legal research. He's also enrolled in an online university in California. This is all considered under rehabilitation. But I would just like to make one point. I'm not entirely sure this is rehabilitation. Rehabilitation is when there was something wrong and you took steps to improve it. I would argue that Mr. McGill's conduct, as shown by all the records during his incarceration, are not rehabilitation. They simply show the true nature of the man. They were there already. And he continues to behave in that way. One problem, Ms. Hughes, even accepting that account, can you maybe focus on where the district court abused its discretion in its decision below? Yes. District court abused its discretion by not giving sufficient weight to Mr. McGill's rehabilitation. And moreover, the district court, during sentencing, said he was relying upon a denial memo he had written when he denied Mr. McGill's motion for compassionate release. And throughout, the government basically took long passages from the denial memo and incorporated it into its sentencing memos. Here's the problem. Yes, you look at the same factors. However, in a consideration of a motion for compassionate release, the court is assessing whether or not the defendant should be released immediately, right then, that day. And in Mr. McGill's case, that would have meant a 19-year sentence. And the court said, that's just too, that's not enough. When sentencing, at the resentencing, there was a whole array of options as far as sentence. It wasn't just right now and 19 years or back you go. It was an opportunity to correct what we felt were errors in the original sentencing. And so, in doing so, the analysis of the 355-3A factors is done for a different purpose. Most motions for compassionate release, there's really a focus on, is someone a danger to the community? Is they be letting something back in? The other factors aren't stressed. And in Mr. McGill's case, the court did not, said he did not reassess the factors. He simply relied upon them as he had looked at them for compassionate release. We'd say that is an abuse of discretion. He should have done it again. So, what exactly is his sentence at the moment? At the moment, two life sentences. One counts life on the drug conspiracy, life on the RICO conspiracy, 120 months on the violent act in aid of RICO. Those are all concurrent? Yes. 240 months on witness tampering. And then the sixth count, which is not concurrent, is consecutive, is the 120 months. Is he subject to the parole commission? I'm sorry, I don't know. You don't know. But when the District of Columbia had indeterminate sentences, and in 1999, according to the government anyway, they had an indeterminate sentencing scheme before the District of Columbia adopted the guidelines. And so, his sentence on count three was, what, 30 years to life, which implies at least that somebody's got to decide where in between 30 years to life he falls. And I've assumed, although I don't see it in the papers, that he's subject to the parole commission in making that determination. And I'm we're asking this court to... No, not this court, the parole commission. No, because it was never supposed to be 30 years to life anyway. That was incorrect. What about on the other sentences? Has he ever sought parole on them? No, he's not. He's not subject to the parole commission. Mr. McGill would argue that the harshness of the sentences... Basically, he traded in four life sentences for two life sentences, which is a small consolation to him. Notwithstanding that Mr. McGill went through the same procedures, looking at the guidelines, and felt that with an offense level of 34 and criminal history of five, it would be 235 to 293 months and requested at the lower end, 240 months, which would be 20 years. That's a substantial sentence. The government did the same calculations and came up with a level 36 criminal history five, which would be a sentence of 292 to 365 months and requested a sentence on the high end, which was 34 years. So not even the government was asking for a life sentence. Ms. Hughes, I see your time is up. I don't know if my colleagues have any questions. We'll give you some time for rebuttal. Good morning, your honors. May it please the court, Katherine Kelly on behalf of the United States. Your honors, in this case, the court did properly and reasonably sentence Mr. McGill as it did in August of 2021. As Mr. McGill's counsel has just said, the court did look at the protection of the public, the need for looking at his prior criminal history, looking at the crimes he committed, looking at the nature of Mr. McGill's history and characteristics, and as well, weighed Mr. McGill's rehabilitation in prison. In fact, at the sentencing hearing, Mr. McGill spoke, and thereafter, in explaining his sentence, the court mentioned that it was agreeing that Mr. McGill had properly mentioned his rehabilitation to the court, that it was correct for him to bring it up. The court's ultimate determination was that that rehabilitation, while the court considered it, did not give a determinative weight, which the court was permitted to do in reasonably applying a sentence. The court applied an in-guideline sentence, which is given a rebuttable presumption of reasonableness. The court validly explained its 3553A factor rationale in the decision it made in the compassionate release motion, but made clear at the resentencing hearing that it was that it needed to look at that decision as of the sentencing date, and in fact, it agreed with its rationale in the compassionate release decision as of the date of sentencing. Ms. Kelly, I have a question about your suggested remand on Cal 3. I read Wren to possibly say we have the authority to do that, even though Cal 3's sentence was affirmed in the appeal that was here last time. Yes, my first question is, where do you think Wren got that authority? It seems like Rule 52 merely defines plain error rather than instructs courts on when it applies. Obviously, we're bound by Wren, but why was it right? They cited, as your Honor pointed out, Rule 52, but I believe the court should have authority as just a prudential matter if it sees an illegal sentence that was outside the bounds of the applicable statute at the time of the offense in this case. The prudential concerns don't often control jurisdiction, and if we affirmed the first sentence, we did not remand it to the district court, how was it an open question for the district court? And if it wasn't an open question for the district court, how could we find error with the district court's failure to do what it didn't have the authority to do? I believe at the resentencing, the district court indicated that it did not believe under Rule 52 that it could touch something that this court had not addressed before. My recollection of the direct appeal decision is that it wasn't a matter of this court deciding in the original direct appeal. I think that means we affirmed it. I'm sorry, Your Honor. I think that means we affirmed it if the sentence wasn't challenged on appeal, and then when the appeal is over, I think it was affirmed. But let me ask my second question, which I think is maybe what I'm struggling with even more, which is let's say plain error test applies. You have to find the kind of, you know, violation of substantial justice that it would take in order to find plain error and remand for a resentence on count three. Our cases talk about there being a, you know, violation of substantial justice when it means a defendant will be in prison longer than he would otherwise be. And we have the in real sealed case from, I think, 2009 that talks about that. Here, it's a little different because even if we remand on count three for the sentence to be 15 years to life, as you suggest, he still has the other life sentences. So since he's going to, if we affirm on the other counts, that would mean he'll be serving life sentences regardless of whether we remand on number three, count three. So why is, why does substantial justice require us to remand on count three? Because each count is individually sentenced, and even though counts one and two will provide a life sentence in this case, so practically he is not getting out, and he already hasn't gotten out in 15 years, frankly. It's important that the sentences individually be legally accurate. So, and our precedents say it's important that they be accurate so that no, even so that no defendant spends a day longer in prison than he should. Here, though, why is it important? It may, the fourth prong of a line of the fairness and integrity of judicial proceedings, I believe, would probably be the most at point on that. And I honestly don't believe that that, of course, doesn't require the court to do a full resentencing or anything else. It's just a matter of correcting the low end of that count three sentence. So it would certainly indicate that just to show the fairness and integrity of the court that a technically illegal sentence not remain on his judgment. If the court has no other, I'm sorry. Do you think that the Supreme Court's decision in Rosales-Morales requires us to find plain error here? Because if a mis-sentencing under the guidelines, which are discretionary, is usually plain error, then here we have, you know, arguably a statutory error of sentencing, which is more serious, perhaps, than a guidelines error. And this, too, is a D.C. code offense as well because it's assault with intent to murder. So it's a little different than a guidelines sentence. But wouldn't the reasoning of that case apply even with more force to a statutory violation? I don't know, Your Honor. I'm not completely familiar with the case as I stand here. The court has no further questions. We respectfully submit that the district court did not abuse its discretion in resentencing Mr. McGill, and we respectfully request that the court affirm the district court's judgment. Thank you. Ms. Hughes, we'll give you two minutes for rebuttal. As to count three, 15 to life would be indeterminate. However, I think it would still be indeterminate, but the actual sentence was supposed to be 10 to 30, no more than 30 years, and that would have been subject to parole. If the court did reexamine 355-3A factors for Mr. McGill's resentencing, it did not, there's no evidence of it on the record. Again, he simply relied upon what he had done previously. Did the court want us to address in any way the motion for reassignment? Nothing further. Pardon? Do you have anything further? No. Thank you. Ms. Hughes, you were appointed by the court to represent the appellants in this case, and the court thanks you for your assistance. Thank you. Case is submitted.
judges: Rao, Walker, Randolph